J-S24003-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARCUS COGMON | |
| Appellant | No. 3407 EDA 2013 |

Appeal from the Judgment of Sentence June 28, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0007397-2011

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                   **FILED MAY 22, 2015**

Appellant, Marcus Cogmon, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions of second-degree murder, three counts of robbery, and three counts of criminal conspiracy to commit robbery.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT

---

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(ii), 3701(a)(1)(iv), 3701(a)(1)(v), 903 (3701(a)(1)(ii) related), 903 (3701(a)(1)(iv) related), and 903 (3701(a)(1)(v) related), respectively.

ON THE CHARGE OF CRIMINAL CONSPIRACY TO ROB (COUNT 11) WHERE THE COMMONWEALTH FAILED TO ESTABLISH THAT [APPELLANT] CONSPIRED WITH CO-DEFENDANT AND WHERE THE RECORD CLEARLY REFLECTED THAT CO-DEFENDANT COMMITTED A SEPARATE, DISTINGUISHABLE ACT FOR MOTIVES SEPARATE FROM THE ROBBERY?

IS [APPELLANT] ENTITLED TO AN ARREST OF JUDGMENT ON THE CHARGE OF MURDER IN THE SECOND DEGREE WHERE THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE VERDICT; WHERE THE COMMONWEALTH FAILED TO PROVE A MATERIAL ELEMENT OF THE OFFENSE, TO WIT, THAT THE KILLING OF THE VICTIM WAS IN FURTHERANCE OF THE ALLEGED ROBBERY; AND FINALLY WHERE THE TRIAL COURT ERRED IN DENYING APPELLANT'S POST-TRIAL MOTION FOR JUDGMENT OF ACQUITTAL BASED ON INSUFFICIENT EVIDENCE?

IS [APPELLANT] ENTITLED TO A NEW TRIAL ON THE CHARGE OF MURDER IN THE SECOND DEGREE WHERE THE VERDICT IS NOT SUPPORTED BY THE GREATER WEIGHT OF THE EVIDENCE, AND WHERE THE GREATER WEIGHT OF THE EVIDENCE DID NOT SUPPORT A FINDING THAT THE KILLING OF THE VICTIM WAS IN FURTHERANCE OF THE ROBBERY?

(Appellant's Brief at 3).[2]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Kevin F. Kelly, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed June 23, 2014, at 17-22, 35-39, 42-45) (finding: **(1)** trial evidence supports jury's finding beyond reasonable

_____

[2] We have reordered Appellant's issues for ease of disposition.

- 2 -

doubt that Appellant and co-defendant, Mr. Bowman, conspired to commit armed robbery of victim, Mr. Rossiter; Appellant and co-defendant had significant ongoing relationship as Appellant was co-defendant's music manager; Appellant and co-defendant arrived at Mr. Howard's home together; after victim displayed cash in his wallet, Appellant sent co-defendant text message that stated "might rob him when we done"; Appellant and co-defendant briefly left Mr. Howard's home together and both returned wearing black hooded sweatshirts; co-defendant gave his sweatshirt to Appellant who did not leave sweatshirt unattended during remainder of time at Mr. Howard's home; co-defendant was seen reaching into sweatshirt pocket, from which firearm was later produced; Appellant and co-defendant followed victim and Mr. Washington outside and stood next to each other at rear of Mr. Washington's vehicle; once Appellant began robbery of victim, co-defendant stopped Mr. Washington from helping victim by implying co-defendant had firearm, and then brandishing firearm toward Mr. Washington's face; when victim attempted to regain his wallet from Appellant, co-defendant told Appellant "We already got it. Let's go"; Appellant and co-defendant fled scene together and attempted to elude police by hiding together at motel where both were later arrested; viewing evidence most favorably to Commonwealth as verdict winner, Appellant and co-defendant conspired to perpetrate armed robbery of victim, and co-defendant's actions of killing victim were in furtherance of such criminal

agreement; due to conspiratorial relationship, Appellant and co-defendant were not relieved of criminal liability for each other's actions because, at time of shooting, robbery was still in progress and any of Appellant's or co-defendant's acts were undertaken in commission of robbery; jury was able to use Commonwealth's evidence, including Mr. Washington's testimony, to reach verdict; there was sufficient evidence for jury to find beyond reasonable doubt that Appellant conspired to commit robbery of victim by threatening or intentionally placing victim in fear of immediate serious bodily injury; there was sufficient evidence to sustain Appellant's convictions for conspiracy to commit robbery; **(2)** there was substantial evidence for jury to conclude beyond reasonable doubt that victim's death was consequence, and not merely coincidence of, collective scheme to rob victim; co-defendant killed victim during his attempt to reclaim his stolen wallet from Appellant; co-defendant's acts were in furtherance of their planned robbery; Appellant and co-defendant had not begun to retreat from scene of robbery at time of victim's murder; when co-defendant shot and killed victim, Appellant was still actively and directly engaged in robbery while taunting victim with stolen wallet and mockingly threatening victim's requests that his wallet be returned; victim was murdered in furtherance of Appellant's and co-defendant's scheme to rob victim because robbery and conspiracy to commit robbery were ongoing when co-defendant killed victim; Appellant perpetuated robbery by taunting victim when he asked for his wallet back,

and by telling victim he would have to fight Appellant for it; co-defendant shot and killed victim when he reached out and attempted to take his wallet back from Appellant; co-defendant fired fatal shot to protect Appellant from victim and/or to promote goal of stealing victim's money by assuring victim would not reclaim his wallet; co-defendant's use of firearm was in course of committing theft and in furtherance of Appellant's felonious robbing of victim; jury was free to scrutinize totality of trial evidence and all witness testimony, including Mr. Washington's testimony regarding what occurred before, during, and immediately after Appellant and co-defendant robbed victim; jury was provided with detailed testimonial evidence from Mr. Washington, as well as other clearly incriminating evidence surrounding robbery and murder of victim, such as Appellant's text message to co-defendant about robbing victim; jurors collectively believed beyond reasonable doubt that victim's murder was in furtherance of Appellant's and co-defendant's planned robbery; **(3)** Appellant properly preserved challenge to weight of evidence; court's conscience was not shocked by jury's conclusion beyond reasonable doubt that victim's killing was done in furtherance of Appellant's and co-defendant's schemed robbery of victim; court was not troubled by jury's determination that victim's murder was done to end struggle between Appellant and victim and to allow Appellant and co-defendant to flee before victim gained control of situation or police responded to scene; given jury's credibility determinations, court was not

troubled by jury's rejection of claim that victim's shooting was unrelated to Appellant's and co-defendant's agreed-upon robbery of victim; trial record supports jury's rejection of Appellant's alternative motive for co-defendant's killing of victim, that animosity from "rap battle" motivated co-defendant; evidence plainly demonstrates that co-defendant's deadly use of firearm was part of his and Appellant's common robbery scheme, not some lingering "rap battle" hostility; co-defendant killed victim after seeing that victim had begun to struggle with Appellant in effort to reclaim victim's wallet; record is devoid of any evidence of partiality, prejudice, bias, and ill will, or that law was overridden or misapplied at any point of trial; court did not abuse its discretion in denying Appellant's weight of evidence claim because court's decision was based on reasonable foundation).[3]  The record supports the trial court's decision; therefore, we see no reason to disturb it.  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

_____

[3] The following errors appear in the trial court's opinion:
(a)    page 10, paragraph 2, line 11, **Commonwealth v. Olds**, 469 A.2d 1072, 1075 (1984) should be (1983);
(b)    page 39, line 9, **Commonwealth v. Lofton**, 57 A.3d 1270, 1274 (Pa.Super. 2012) should be 1273;
(c)    page 40, line 4, **Commonwealth v. Stays**, 70 A.3d 1256, 1268 (Pa.Super. 2013) should be 1267;
(d)    page 41, line 4, **Id.** 70 A.3d at 1268 refers to **Stays, supra**, cited on page 40, line 4;
(e)    page 44, paragraph 2, line 2, **Id.** 560 Pa. at 322, 744 A.2d at 753 refers to **Commonwealth v. Widmer**, cited on page 41, paragraph 2, line 11.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2015

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL

COMMONWEALTH OF PENNSYLVANIA    :    No. 7397-11

           : 

        v.                 :

           :

MARCUS COGMON               :


**John F. X. Reilly, Esquire – Deputy District Attorney for the Commonwealth**
**Coley O. Reynolds, Esquire – Attorney for Marcus Cogmon**


## O P I N I O N

**Kelly, J.**                                      **Date: June 23, 2014**

This case commenced on December 15, 2011, with the Defendant's arrest and resultant filing of a Criminal Complaint by Detectives Steven Jackson, Upland Borough Police Department, and Edward Kazlo, Delaware County Criminal Investigation Division, *inter alia*, charging Marcus Cogmon[1] (hereinafter referred to as "Defendant" or "Cogmon") with Murder of the First Degree;[2] Murder of the Second Degree;[3] Murder of the Third Degree;[4] and Robbery – Inflicts Serious Bodily Injury.[5]

Defendant Cogmon's Preliminary Hearing was held on February 22, 2012. The Commonwealth was permitted by the Magisterial District Judge to amend its Criminal Complaint to reflect the additional charge of Criminal Conspiracy to commit Robbery (Inflicts Serious Bodily Injury).[6] The presiding Magisterial District Judge on the prosecution's

---

[1] In the matter at bar, Defendant Cogmon was arrested and tried with a co-Defendant, Rashan Bowman (hereinafter referred to as "co-Defendant" or "Bowman"). *See Commonwealth v. Bowman*, No. 7398-11 – Delaware County.

[2] 18 Pa.C.S. § 2502(a).
[3] 18 Pa.C.S. § 2502(b).
[4] 18 Pa.C.S. § 2502(c).
[5] 18 Pa.C.S. § 3701(a)(1)(i).
[6] 18 Pa.C.S. § 903(3701(a)(1)(i)).



presentation of evidence held the Defendant for trial court purposes as to all charged offenses, including the amended Criminal Conspiracy[7] allegation.

On March 21, 2012, Defendant Cogmon was formally arraigned before the trial court. The Commonwealth lodged against the Defendant a Criminal Information, *inter alia*, averring as follows: Count 1 - Murder of the First Degree;[8] Count 2 - Murder of the Second Degree;[9] Count 3 - Murder of the Third Degree;[10] Count 7 - Robbery - Inflicts Serious Bodily Injury;[11] and Count 8 - Criminal Conspiracy to commit Robbery.[12] *See* Criminal Information.

On February 21, 2013, Defendant Cogmon filed a counseled Motion to Quash Return of Transcript and/or Petition for Writ of Habeas Corpus. *See* Defendant's Motion/Petition. The Defendant on February 25, 2013, also lodged a counseled Motion for Suppression of Evidence. *See* Defendant's Suppression Motion. On March 7, 2013, a hearing was held before this court concerning both the Motion to Quash Return of Transcript and/or Petition for Writ of Habeas Corpus as well as the Motion for Suppression of Evidence. N.T. 3/7/13. Unable to complete all the relevant testimony that day (March 7, 2013), this court heard the remaining evidentiary presentations on March 13 and 14, 2013. N.T. 3/13/13. N.T. 3/14/13. By order dated April 24, 2013, the court granted in part and in part denied Defendant Cogmon's Suppression Motion. *See* Order dated April 24, 2013. The court also on April 24, 2013, denied the Defendant's Motion to Quash Return of Transcript and/or Petition for Writ of Habeas Corpus. *See* Order dated April 24, 2013.

---

[7] *Id.*
[8] 18 Pa.C.S. § 2502(a).
[9] 18 Pa.C.S. § 2502(b).
[10] 18 Pa.C.S. § 2502(c).
[11] 18 Pa.C.S. § 3701(a)(1)(i).
[12] 18 Pa.C.S. § 903(3701(a)(1)(i)).

2

On April 24, 2013, the Commonwealth filed a Motion to Amend Informations pursuant to Pa.R.Crim.P. 564.[13] *See* Motion to Amend Informations. By order dated April 25, 2013, the court allowed the Commonwealth's Amendment Motion, and the following averments as a result were added to the Criminal Information: Count 9 – Robbery – Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury;[14] Count 10 – Robbery – Inflict, Threaten or Place in Fear of Bodily Injury;[15] Count 11 – Robbery – Force However Slight;[16] and Count 12 – Conspiracy to commit these forms of Robbery.[17] *See* Order dated April 25, 2013.

On April 25, 2013, a jury trial of both Defendant Cogmon and co-Defendant Bowman commenced, continued over the next several days, and concluded before this court on May 2, 2013. Defendant Cogmon was found guilty of the Criminal Information's Count 2 - Murder of the Second Degree;[18] Count 9 - Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury;[19] Count 10 – Robbery - Inflict, Threaten, or Place in Fear of Bodily Injury;[20] Count 11 – Robbery - Force However Slight;[21] Count 12 - Conspiracy - Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury;[22] Count 12 - Conspiracy – Robbery - Inflict, Threaten, or Place in Fear of Bodily Injury;[23] and Count 12 –

---

[13] Pa.R.Crim.P. 564.
[14] 18 Pa.C.S. § 3701(a)(1)(ii).
[15] 18 Pa.C.S. § 3701(a)(1)(iv).
[16] 18 Pa.C.S. § 3701(a)(1)(v).
[17] 18 Pa.C.S. § 903(3701(a)(1)(ii)(iv)(v)).
[18] 18 Pa.C.S. § 2502(b).
[19] 18 Pa.C.S. § 3701(a)(1)(ii).
[20] 18 Pa.C.S. § 3701(a)(1)(iv).
[21] 18 Pa.C.S. § 3701(a)(1)(v).
[22] 18 Pa.C.S. § 903(3701(a)(1)(ii)).
[23] 18 Pa.C.S. § 903(3701(a)(1)(iv)).

3

Conspiracy – Robbery - Force However Slight.[24] *See* Verdict.[25] *See also* N.T. 5/2/13, pp. 285-89.

On June 14, 2013, the Commonwealth lodged a Motion to Correct Informations Pursuant to Pa.R.Crim.P. 564.[26] *See* Motion to Correct Informations. The court permitted the prosecution to again amend the Criminal Information to correct a clerical mistake discovered by the Delaware County Office of Judicial Support.[27] *See* Order dated June 28, 2013.

A sentencing proceeding was held on June 28, 2013, before this court. N.T. 6/28/13. Without objection, the court concluded that Defendant Cogmon's three (3) Robbery findings of guilt: Count Nine (9), Count Ten (10), and Count Eleven (11);[28] all merged for sentencing purposes into his Second Degree Murder[29] conviction (Count 2). N.T. 6/28/13, pp. 13-14. Defendant Cogmon was accordingly sentenced per the Criminal Information's Count 2 (Murder

---

[24] 18 Pa.C.S. § 903(3701(a)(1)(v)).

[25] Prior to trial, absent objection, the prosecution withdrew the balance of its Criminal Information's Counts.

[26] At the time of its original filing (March 21, 2012), the Commonwealth's Criminal Information contained the clerical error of omitting a Count 6. This oversight was later rectified by the prosecution filing on June 14, 2013, its Commonwealth's Motion to Correct Informations Pursuant to Pa.R.Crim.P. 564. *See* Commonwealth's Motion to Correct. By order dated June 28, 2013, the court permitted the lodging of a Criminal Information with the counts in proper numerical sequence. *See* Order dated June 28, 2013.

[27] The Criminal Information should have listed in sequential numerical order the criminal charge allegations against Defendant Cogmon as follows, including the amendments permitted by the April 25, 2013, order: Count 1 - Murder of the First Degree; Count 2 - Murder of the Second Degree; Count 3 - Murder of the Third Degree; Count 4 - Aggravated Assault; Count 5 - Aggravated Assault; Count 6 - Robbery - Inflicts Serious Immediate Bodily Injury; Count 7 - Criminal Conspiracy to Robbery – Inflicts Serious Bodily Injury; Count 8 - Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury; Count 9 - Robbery - Inflict, Threaten, or Place in Fear of Immediate Bodily Injury; Count 10 - Robbery - Force However Slight; and Count 11 - Criminal Conspiracy to commit these forms of Robbery. *See* Criminal Information, as corrected, filed June 28, 2013. *See also* Order dated April 25, 2013.

[28] As noted above, the Criminal Information should have listed the Robbery counts as Count 8 - Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury; Count 9 - Robbery - Inflict, Threaten, or Place in Fear of Immediate Bodily Injury; and Count 10 - Robbery - Force However Slight. *See* Criminal Information, as corrected, filed June 28, 2013.

[29] 18 Pa.C.S. § 2502(b).

4

in the Second Degree)[30] to a term of life imprisonment, without parole;[31] and Count 12 (Conspiracy[32] to commit these forms of Robbery)[33] - five (5) to ten (10) years incarceration. All sentences were directed to be served concurrently. *See* Certificate of Imposition of Judgment of Sentence. *See also* N.T. 6/28/13, pp. 55-56.

On July 9, 2013, Defendant Cogmon lodged a counseled Petition for Leave to File Motion Out of Time as well as his Motion for Post-Sentence Relief. *See* Defendant's Petition and Post-Sentence Motion. Without Commonwealth objection, the Petition was granted and the Defendant was permitted to proceed with his Post-Sentence Motion *nunc pro tunc*. *See* Order dated September 27, 2013. By his Post-Sentence Motion, the Defendant sought an arrest of judgment or alternatively, the awarding of a new trial. *See* Defendant's Post-Sentence Motion. On October 10, 2013, a hearing regarding Defendant Cogmon's Post-Sentence Relief Motion took place before this court. N.T. 10/10/13. The court denied the Defendant's Post-Sentence Motion per order dated October 28, 2013. *See* Order dated October 28, 2013.

On November 27, 2013, Defendant Cogmon filed a counseled Notice of Appeal. *See* Notice of Appeal. The court via order of December 3, 2013, instructed Defendant Cogmon's attorney to lodge of record a Concise Statement of Matters Complained of on Appeal. *See* Order dated December 2, 2013. Defendant Cogmon's lawyer filed a Petition for Leave to File Statement of Matters Complained of on Appeal Out of Time on January 8, 2014. *See*

---

[30] *Id.*

[31] 18 Pa.C.S. § 1102(b).

[32] 18 Pa.C.S. § 903(3701(a)(1)(ii)(iv)(v)).

[33] The court also determined, absent opposition, that Defendant Cogmon's various Criminal Conspiracy to commit Robbery convictions (Counts 12) each merged for sentencing purposes into the most significant such conviction, Criminal Conspiracy to commit Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury (Count 12). N.T. 6/28/13, p. 14. *See also* Certificate of Imposition of Judgment of Sentence. As noted above, the Criminal Information should have listed the Conspiracy counts as Count 11 - Criminal Conspiracy to commit these forms of Robbery. *See* Criminal Information, as corrected, filed June 28, 2013.

5

Defendant's Petition for Leave. The court by order of January 8, 2014, granted Defendant

Cogmon's *nunc pro tunc* Petition. *See* Order dated January 8, 2014. Responding to this order

(January 8, 2014), Defendant Cogmon's counsel lodged on January 15, 2014, a Statement of

Matters Complained of on Appeal raising the five (5) below discussed assignments of error.

> ***I. The Trial Court erred in denying the appellant's post-trial motion for a judgment of
> acquittal because the evidence was insufficient as a matter of law to establish the Appellant's
> guilt beyond a reasonable doubt on the charge of Conspiracy to Robbery (Count 11), because
> the evidence at trial failed to establish that Appellant conspired with the co-defendant, rather,
> the co-defendant committed a separate distinguishable act for motives separate from the
> robbery.***

*See* Statement of Matters Complained, No. 5.

In evaluating any type sufficiency claim, the court must accept the evidence in the light

most favorable to the Commonwealth and also drawing all rational evidentiary inferences

determine whether a reasonable jury could have found that each element of the crime(s) charged

was established beyond a reasonable doubt. *Commonwealth v. Patterson,* 940 A.2d 493, 500

(Pa.Super. 2007) and *Commonwealth v. Rosario,* 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364

(1994) *citing Commonwealth v. Calderini,* 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992)

*citing Commonwealth v. Jackson,* 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court

reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [the court's]

judgment for the fact-finder." *Commonwealth v. Orr,* 38 A.3d 868, 872 (Pa.Super. 2011) *citing*

*Commonwealth v. Hansley,* 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones,*

874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick,* 830 A.2d 998, 1000

(Pa.Super. 2003) *quoting Commonwealth v. Gooding,* 818 A.2d 546, 549 (Pa.Super. 2003),

*appeal denied,* 575 Pa. 691, 835 A.2d 709 (2003).

6

The evidence at trial need not " ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt." *Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Although a conviction must be based on " ... more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super. 1997). " ... [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). These long settled principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered "[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the jury is tasked with being the " ... sole judges of the credibility and weight of all testimony," and is

7

certainly free to reject or accept, in whole or part, the testimony of all witnesses. Pa. SSJI (Crim) 2.04. Regarding the offered testimony and other trial evidence, the jury in making their decision may choose what they value and discount what they find unpersuasive.

Material to this issue advanced by Defendant Cogmon on appeal, Conspiracy is defined in the Pennsylvania Criminal Code as follows:

> (a) Definition of conspiracy.-- A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime ... ; or
>> (2) agrees to aid such other person or persons in the planning or commission of such crime ... .

18 Pa.C.S. § 903(a)(1)(2).

The relevant sections of the Robbery[34] statute as defined in the Pennsylvania Criminal Code is that below:

> (1) A person is guilty of robbery if, in the course of committing a theft, he: ...
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; ...
>
> (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
>
> (v) physically takes or removes property from the person of another by force however slight; ... .

18 Pa.C.S. § 3701(a)(1)(ii)(iv)(v).

"A conspiracy is an agreement to commit an unlawful act; the agreement can be proven by the relation, conduct, or circumstances of the parties." *Commonwealth v. Baskerville*, 452 Pa.Super. 82, 93, 681 A.2d 195, 201 (1996) *citing Commonwealth v. Glover*, 399 Pa.Super. 610,

---

[34] The Defendant seemingly assigns error generally to his various Conspiracy to commit Robbery convictions.

8

616, 582 A.2d 1111, 1114 (1990) *citing Commonwealth v. Jackson supra* 506 Pa. at 473, 485 A.2d at 1104. An overt act is " ... an act done in furtherance of the object of the conspiracy." *Commonwealth v. Prep*, 186 Pa.Super. 442, 451, 142 A.2d 460, 465 (1958) *quoting Commonwealth v. Mezick*, 147 Pa.Super. 410, 413, 24 A.2d 762, 764 (1942). An overt act must only be shown to have been "committed by a co-conspirator" as it is not required to legally sustain a conspiracy conviction that each of the conspirators undertake actions to effectuate their criminal understanding. *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa.Super. 2000) *quoting Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa.Super. 1998) *(en banc), appeal denied,* 559 Pa. 689, 739 A.2d 1056 (1999) *citing Commonwealth v. Swerdlow*, 431 Pa.Super. 453, 458, 636 A.2d 1173, 1176–1177 (1994). Commission of the object crime by any conspirator satisfies the overt act necessary to the Commonwealth proving as a matter of law a conspiracy. *Commonwealth v. Sanchez*, 82 A.3d 943, 973 (Pa. 2013) *citing Commonwealth v. Weimer*, 602 Pa. 33, 39, 977 A.2d 1103, 1106 (2009). Once it is established that the defendant entered into a criminal agreement " ... that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." *Commonwealth v. Murphy*, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) *citing Commonwealth v. Wayne*, 553 Pa. 614, 630, 720 A.2d 456, 463-64 (1998). *See also Commonwealth v. Ruiz*, 819 A.2d 92, 98 (Pa.Super. 2003) *quoting Commonwealth v. Lambert*, 795 A.2d 1010, 1016-17 (Pa.Super. 2002) *quoting Commonwealth v. Galindes,* 786 A.2d 1004, 1011 (Pa.Super. 2001); *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson,* 351 Pa.Super. 309, 316, 505 A.2d 997, 1001 (1986); and *Commonwealth v. Bachert,* 271 Pa.Super. 72, 77, 412 A.2d 580, 583 (1979).

9

Circumstantial evidence is sufficient to prove evidence of a conspiracy. *Commonwealth v. Maxwell*, 354 Pa.Super. 555, 561, 512 A.2d 679, 682 (1986) *citing Commonwealth v. Carter*, 272 Pa.Super. 411, 414, 416 A.2d 523, 524 (1979). The Commonwealth is under no obligation to prove a conspiracy through " ... direct proof or an explicit or formal agreement." *Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001 *citing Commonwealth v. Fontana*, 265 Pa.Super. 387, 395, 401 A.2d 1361, 1365 (1979). "Indeed, direct proof of an explicit or formal agreement to commit a crime can seldom, if ever, be supplied and it need not be for 'it is established law in this Commonwealth that a conspiracy may be proved by circumstantial evidence as well as by direct evidence.' " *Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001 *quoting Commonwealth v. Roux*, 465 Pa. 482, 488, 350 A.2d 867, 870 (1976). "The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." *Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85.

The Superior Court has found the following factors instructive in reviewing an appellate complaint regarding whether as a matter of law a conspiracy conviction was supported by sufficient evidence:

> (1) [A]n association between alleged conspirators; (2) [K]nowledge of the commission of the crime; (3) [P]resence at the scene of the crime; and (4) [I]n some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

*Commonwealth v. Ruiz supra* 819 A.2d at 97 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016 *quoting Commonwealth v. Olds*, 322 Pa.Super. 442, 447-48, 469 A.2d 1072, 1075 (1984).

10

Salient to current considerations, the facts summarized *infra* were established at Defendant Cogmon's trial.

On December 13, 2011, Jamir Washington (hereinafter referred to as "Mr. Washington") arrived at Jason Rossiter's (hereinafter referred to as "Mr. Rossiter") residence with the intentions of the two (2) men and Jalil Howard (hereinafter referred to as "Mr. Howard") visiting a music recording studio. N.T. 4/26/13, p. 89. Prior to picking up Mr. Rossiter, Mr. Washington purchased a bottle of vodka at the Wine and Spirits store in Holmes, Ridley Township, at 2:35 P.M. *See* Commonwealth Exhibit CS-11 - Receipt from Wine and Spirits Store from 12/13/11 at 2:35 P.M. *See also* N.T. 4/29/13, pp. 87-88. After leaving the Wine and Spirits shop, Mr. Washington went to a Wawa convenience store and purchased cigarettes. N.T. 4/29/13, pp. 96-97. Following this stop, Mr. Washington continued on to Mr. Rossiter's residence. N.T. 4/29/13, p. 96. The two (2) men remained at Mr. Rossiter's home for approximately twenty (20) to thirty (30) minutes. N.T. 4/29/13, pp. 97-98. They then proceeded to Mr. Howard's residence. The trip lasted approximately thirty (30) minutes. N.T. 4/29/13, p. 98.

Mr. Washington and Mr. Rossiter got to Mr. Howard's house between 3:00 P.M. and 3:30 P.M. N.T. 4/29/13, p. 16. Mr. Washington parked his motor vehicle in the parking area located behind Mr. Howard's residence. N.T. 4/26/13, pp. 92-93. Mr. Howard was home along with his infant daughter. N.T. 4/26/13, p. 93. Mr. Howard advised Mr. Washington and Mr. Rossiter that they would be unable to leave for the studio until the mother of Mr. Howard's daughter, Ms. Tania Campbell, and a music producer named Kyle Elliot arrived at his house. N.T. 4/26/13, pp. 93-94. While waiting, the three (3) men practiced rapping, and Mr. Howard informed Mr. Washington and Mr. Rossiter that he knew another individual who also could "freestyle" rap. N.T. 4/26/13, pp. 94-95. N.T. 4/29/13, p. 17.

11

Mr. Howard contacted this individual and the two (2) Defendants subsequently appeared at Mr. Howard's residence, primarily for co-Defendant Bowman to have a "rap battle" with Mr. Rossiter. N.T. 4/26/13, pp. 99-100. N.T. 4/29/13, p. 17. Defendant Cogmon was introduced to Mr. Washington as "Bigs," and co-Defendant Bowman was introduced as "M."[35] N.T. 4/26/13, pp. 101-02. Mr. Rossiter and Mr. Washington were told that Defendant Cogmon was the manager for co-Defendant Bowman's music career. N.T. 4/26/13, p. 102. N.T. 4/29/13, p. 102. Co-Defendant Bowman advised the group that he would not rap against anyone unless money was "put up," and Mr. Rossiter removed his wallet showing the others that he had the cash to compete. N.T. 4/26/13, pp. 102-04. After discussing possible bets on their "freestyle rapping" for approximately ten (10) minutes, Mr. Washington convinced the men not to wager on their rapping abilities. N.T. 4/26/13, pp. 103-04. Mr. Rossiter and co-Defendant Bowman had a "cipher"[36] which lasted approximately forty-five (45) minutes. N.T. 4/26/13, pp. 104-05. N.T. 4/29/13, p. 18. Once this "cipher" concluded, the individuals discussed music amongst an array of topics while consuming alcohol for approximately thirty (30) minutes. N.T. 4/29/13, pp. 19-20.

Defendant Cogmon and Mr. Washington began a discussion about marijuana which resulted in the two (2) men leaving the Howard residence and walking to a white Chevrolet Lumina parked nearby. N.T. 4/26/13, pp. 106-08. Defendant Cogmon had the keys to this motor

---

[35] Co-Defendant Bowman on or about March 4, 2013, lodged a counseled Motion *In Limine* seeking to prohibit the prosecution at trial from eliciting witness testimony and/or any such other evidence referencing his nickname, "Murder." *See* Defendant Bowman's Motion *In Limine*. This motion was heard on March 7, 2013, immediately before the suppression proceeding. N.T. 3/7/13, pp. 13-29. Concluding that the Commonwealth's use at trial of this nickname given the allegations at bar would be substantially prejudicial and that the prosecution could otherwise establish among its witnesses a consistent identification of Defendant Bowman, the court directed per order of April 24, 2013, that use of the nickname, "Murder," was precluded and in lieu of such, the co-Defendant could be referred to during trial by the shorthanded moniker, "M." *See* Order dated April 24, 2013.

[36] A cipher (or cypher) as described by Mr. Washington is when two (2) or more people are involved in rapping and the individuals take turns rapping about any topic. N.T. 4/26/13, pp. 104-05.

12

vehicle and after opening the car, the Defendant gave Mr. Washington a "bud" of marijuana from a bag that he removed from the motor vehicle. N.T. 4/26/13, pp. 107, 110-11. The men exchanged phone numbers so that Defendant Cogmon could sell Mr. Washington marijuana at a later date. N.T. 4/26/13, pp. 111-12.

On Mr. Washington and Defendant Cogmon's return to the Howard house, the two (2) Defendants left the home before returning approximately only some twenty (20) to thirty (30) minutes later. N.T. 4/26/13, pp. 113-14. *See also* N.T. 4/29/13, p. 20. When the Defendants came back to the house they were wearing black hooded sweatshirts, although on first arriving at the Howard residence each Defendant was only clad in just a T-shirt. N.T. 4/29/13, pp. 29, 99-101. Sometime after arriving the second time at the Howard residence, co-Defendant Bowman gave his hooded sweatshirt to Defendant Cogmon. N.T. 4/26/13, p. 132. N.T. 4/29/13, pp. 29-30, 100-01. For the remainder of the night, Defendant Cogmon did not leave the hooded sweatshirt unattended. N.T. 4/29/13, pp. 29-30, 100-01. In Mr. Washington's statement to detectives that was read during trial, he informed the investigators of co-Defendant Bowman reaching into the pocket of the hooded sweatshirt and appearing to be fumbling with an item. N.T. 4/29/13, pp. 132-33.

Several of the men proceeded to smoke the marijuana that Defendant Cogmon had provided Mr. Washington. N.T. 4/26/13, p. 115. N.T. 4/29/13, p. 21. A "rap battle" then ensued.[37] N.T. 4/26/13, pp. 117-18. N.T. 4/29/13, pp. 21-22. Mr. Washington filmed the "rap

---

[37] This "rap battle," was captured on the videos discussed and shown during Mr. Washington's testimony and were admitted into evidence. N.T. 4/29/13, pp. 21-22. *See* Commonwealth Exhibit C-2 - Videos Nos. 37, 39, and 40 of Rap Battle.

battle" between co-Defendant Bowman and Mr. Rossiter on his cellular telephone.[38] N.T. 4/26/13, pp. 117-18. Mr. Howard finally decided that the "rap battle" was over and announced it was time for everyone to leave. N.T. 4/26/13, p. 126.

Due to Mr. Rossiter and Mr. Washington both being intoxicated, the two (2) men decided against going to the music recording studio with Mr. Howard and began walking to Mr. Washington's car with plans to return to Mr. Rossiter's house. N.T. 4/26/13, pp. 127-29. The Defendants were as well walking in the same direction as Mr. Washington and Mr. Rossiter, but behind the two (2) men. N.T. 4/26/13, p. 130. The two (2) pairs were separated by approximately twenty (20) feet. N.T. 4/26/13, p. 130. On reaching Mr. Washington's motor vehicle, Mr. Washington and Mr. Rossiter opened their respective doors while the Defendants were now positioned at the back of Mr. Washington's car. N.T. 4/26/13, pp. 130-31.

Mr. Rossiter on seeing the two (2) Defendants standing at the rear of Mr. Washington's motor vehicle approached them "extend[ing] his hand to Rashan [co-Defendant Bowman], to say that he was a good rapper and keep doing what you're doing, but they didn't extend his hand back, so [Mr. Rossiter] took as disrespect and said well, fuck you." N.T. 4/26/13, p. 131. Defendant Cogmon then grabbed Mr. Rossiter by the shirt, lifting him and propelling him forward into the car's open passenger door. N.T. 4/26/13, pp. 132-33. Co-Defendant Bowman remained standing just at the back of the motor vehicle. N.T. 4/26/13, p. 133. After being struck and beaten about by Defendant Cogmon, Mr. Rossiter started calling for Mr. Washington's help. N.T. 4/26/13, p. 133. Defendant Cogmon began attempting to reach into Mr. Rossiter's pockets while Mr. Rossiter commenced struggling to keep the Defendant's hands out of his pants pockets. N.T. 4/26/13, p. 134. N.T. 4/29/13, p. 170.

---

[38] Mr. Washington turned the videos over to police following the murder of Mr. Rossiter. N.T. 4/26/13, p. 118. *See* Commonwealth Exhibit C-2 - Videos Nos. 37, 39, and 40 of Rap Battle.

Mr. Washington started walking around the car to assist Mr. Rossiter, but was stopped by co-Defendant Bowman, who reached into his hooded sweatshirt and motioned as though he possessed a firearm. N.T. 4/26/13, p. 134. Reacting to co-Defendant Bowman's threat of being armed with a handgun, Mr. Washington backed up, but after a few seconds again attempted to come to Mr. Rossiter's aid. N.T. 4/26/13, pp. 135-36. Responding to this second effort, co-Defendant Bowman produced a firearm and pointed the handgun in the direction of Mr. Washington's face menacingly preventing his assisting the still struggling Mr. Rossiter. N.T. 4/26/13, pp. 135-36.

After the Defendant had forcibly taken his wallet and stepped away, Mr. Rossiter was able to stand up and remove himself from the car. N.T. 4/26/13, p. 138. Defendant Cogmon was located about five (5) feet from Mr. Rossiter, while co-Defendant Bowman was still positioned just at the motor vehicle's rear. N.T. 4/26/13, p. 139. Defendant Cogmon commenced taunting Mr. Rossiter with the wallet. N.T. 4/26/13, p. 140. Mr. Rossiter asked the Defendant to return his identification and told Defendant Cogmon that he could keep the two hundred dollars ($200.00) in the wallet. N.T. 4/29/13, p. 171. Defendant Cogmon again mocked Mr. Rossiter telling him that he was going to have to fight him for the wallet. N.T. 4/26/13, p. 140. A very brief and modest struggle commenced during which co-Defendant Bowman stated to Defendant Cogmon something to the effect, "let's go. We already got it. Let's go." N.T. 4/26/13, p. 161. Mr. Rossiter then grabbed for his wallet from the Defendant. N.T. 4/26/13, p. 156. As Mr. Rossiter reached for his wallet in Defendant Cogmon's hand, co-Defendant Bowman shot Mr. Rossiter. N.T. 4/26/13, p. 157. Co-Defendant Bowman was located behind and to the side of Defendant Cogmon when he fatally fired the gun. N.T. 4/26/13, pp. 157-159.

15

Prior to the discharging of the firearm by co-Defendant Bowman, Mr. Washington had retreated to the front of his car. Once Mr. Washington heard the gunshot, he dropped to the ground and called emergency services. N.T. 4/26/13, pp. 165-66. After he was shot, Mr. Rossiter fell to the parking lot while calling to Mr. Washington for help crying out that he had been shot. N.T. 4/26/13, p. 166. Mr. Washington immediately observed a silver sedan motor vehicle leave the parking area. N.T. 4/26/13, pp. 166-68. This silver sedan was not the same vehicle from which Defendant Cogmon had removed the marijuana earlier in the night. N.T. 4/26/13, p. 167. Mr. Washington went to Mr. Rossiter and stayed at his side until emergency medical personnel arrived. N.T. 4/26/13, pp. 192-93. At approximately 2:09 A.M., on December 14, 2011, Mr. Rossiter was pronounced dead at Crozer Chester Medical Center. N.T. 4/30/13, p. 36.

The Defendants were soon after observed and pursued by Detective Glen Greenwalt;[39] however, they escaped on deserting their still moving vehicle in an alley. N.T. 4/30/13, pp. 58-121. The Defendants were later collectively apprehended at a Motel Six in Tinicum Township on December 15, 2011. N.T. 4/30/13, pp. 268-281.

At trial, Detective Jackson testified regarding the cellular telephones belonging to co-Defendant Bowman and Defendant Cogmon that were recovered by police during their investigation from the Defendants' hastily abandoned sedan. N.T. 5/1/13, pp. 226-44. Detective Jackson relatedly offered that while searching a Huawei cellular phone he discovered a text message. N.T. 5/1/13, pp. 228-29. This text message was sent at 5:49 P.M. on December 13, 2011, from the Huawei cellular telephone, owned by Defendant Cogmon, to a Samsung Metro

---

[39] In December 2011, Detective Glen Greenwalt was a long tenured member of the Delaware County District Attorney's Criminal Investigation Division. N.T. 4/30/13, pp. 58-59. The detective subsequently retired, and at the time of the trial he was employed as a police officer with Upland Borough and Bethel Township. N.T. 4/30/13, pp. 58-59.

16

PCS cellular telephone, owned by co-Defendant Bowman. N.T. 5/1/13, pp. 230, 234, 236. This text message read, "might rob him when we done." N.T. 5/1/13, pp. 228-29. *See* Commonwealth Exhibit C-56, submarked A through F - Photos of Huawei Cell Phone; Commonwealth Exhibit C-46 - Huawei Cellular Telephone; and Commonwealth Exhibit C-41 – Samsung Metro PCS Cellular Telephone.

By this assignment of error, Defendant Cogmon on appeal advances that the case record was insufficient as a matter of law to sustain his various Conspiracy to Robbery (Count 11) convictions because the evidence at trial failed to establish that the Defendant conspired with the co-Defendant. More specifically, the Defendant maintains that co-Defendant Bowman committed distinguishable acts for motives separate from the robbery. *See* Defendant Cogmon's Statement Matters Complained, No. 5. Based on the applicable law in combination with the above detailed facts established at trial, and recognizing this evidence in the light most favorable to the Commonwealth, this appellate complaint is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

The trial evidence amply supported the jury finding beyond a reasonable doubt that the Defendants conspired and per their criminal agreement's objective committed the armed robbery of Mr. Rossiter. The Defendants enjoyed an ongoing relationship of some significance with Defendant Cogmon being co-Defendant Bowman's music career manager. N.T. 4/26/13, p. 102. N.T. 4/29/13, p. 102. Responding to Mr. Howard's telephone call, the Defendants arrived together at the Howard home. N.T. 4/26/13, pp. 99-100. N.T. 4/29/13, p. 17. After Mr. Rossiter displayed the cash in his wallet, the Defendants together briefly left the "rap battle" and on

17

collectively returning both were dressed in black hooded sweatshirts in lieu of the T-shirts each had been wearing when they first appeared at Mr. Howard's house. N.T. 4/26/13, p. 132. N.T. 4/29/13, pp. 29, 99-101. Co-Defendant Bowman instead of simply removing his sweatshirt once back in the Howard residence and leaving it lying about, instead gave it directly to the Defendant for apparent safekeeping. N.T. 4/29/13, pp. 29-30, 100-01. Defendant Cogmon did not leave his co-Defendant's sweatshirt unattended at any time during the balance of the night, and co-Defendant Bowman was seen reaching into the garment's pocket, the same pocket form which he later removed the firearm. N.T. 4/29/13, pp. 100-01, 132-34. As a pair, the Defendants followed Mr. Washington and Mr. Rossiter to the latter's car. N.T. 4/29/13, p. 130. The Defendants were standing next to each other at the rear of Mr. Washington's vehicle when innocently approached by Mr. Rossiter. N.T. 4/26/13, p. 131. Once the Defendant commenced the robbery of Mr. Rossiter, the co-Defendant first stopped Mr. Washington from coming to his friend's aid through the implied threat of a handgun and then overtly brandishing the firearm toward Mr. Washington's face. N.T. 4/26/13, pp. 134-36. When Mr. Rossiter began his reticent struggle to reclaim his wallet from the taunting Defendant, co-Defendant Bowman stated to the effect, "let's go. *We already got it*. Let's go." N.T. 4/26/13, p. 161. (Emphasis added). The Defendants quickly together fled the scene of the robbery-murder and only separated when pursing Detective Greenwalt activated his police vehicle's emergency lights. N.T. 4/26/13, pp. 166-68. *See also* N.T. 4/30/13, pp. 58-121. The Defendants attempted to elude investigating police by hiding together at a local motel and were both arrested while still together secreted at the motel. N.T. 4/30/13, pp. 268-81.

Beyond this conduct of the Defendants and these salient circumstances creating "a web of evidence linking [the Defendant] to the ... conspiracy beyond a reasonable doubt,"

18

*Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85, Defendant Cogmon earlier that same evening after the Defendants saw the victim's display of cash, sent a text message to his co-Defendant, "might rob him when *we* done." N.T. 5/1/13, pp. 228-29. (Emphasis added). *See also* Commonwealth Exhibit C-56, submarked A through F - Photos of Huawei Cell Phone; Commonwealth Exhibit C-46 - Huawei Cellular Telephone; and Commonwealth Exhibit C-41 –Samsung Metro PCS Cellular Telephone. "'[I]t is the established law in this Commonwealth that a conspiracy may be proved by circumstantial as well as direct evidence.' " *Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001 *quoting Commonwealth v. Roux supra* 465 Pa. at 488, 350 A.2d at 870.

Applying those factors enumerated by the *Ruiz* court to the trial's evidence viewed most favorably to the prosecution, Defendant Cogmon and his co-Defendant conspired to perpetrate the armed robbery of Mr. Rossiter and the actions of co-Defendant Bowman shooting and killing the victim were well within the scope and in furtherance of such a criminal agreement. *Commonwealth v. Ruiz supra* 819 A.22d at 97 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016 *quoting Commonwealth v. Olds supra* 322 Pa.Super. at 447-48, 469 A.2d at 1075. (The necessary "web of evidence" to establishing a conspiracy can be found on an association of the conspirators, knowledge of the crime's perpetration, and presence at the crime scene when viewed in the material, contextual circumstances.) *See also Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103. Persons acting in concert intending to commit only a "strong armed" robbery do not collectively leave their targeted victim's presence and return armed with a firearm before perpetrating their common criminality.

19

Due to the overwhelming evidence that Defendant Cogmon and co-Defendant Bowman enjoyed a conspiratorial relationship, the acts of co-Defendant Bowman consequently burdened Defendant Cogmon with such criminal liability so long as those acts were in furtherance of the conspiracy. *Commonwealth v. Murphy supra* 577 Pa. at 292, 844 A.2d at 1238 *citing Commonwealth v. Wayne supra* 553 Pa. at 630, 720 A.2d at 463-64. *See also Commonwealth v. Ruiz supra* 819 A.2d at 98 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016-17 *quoting Commonwealth v. Galindes supra* 786 A.2d at 1011; *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001; and *Commonwealth v. Bachert supra* 271 Pa.Super. at 77, 412 A.2d at 583. As the robbery of Mr. Rossiter was yet ongoing, Defendant Cogmon was not free from being bound by the conspiracy and the criminal partnership he clearly entered with co-Defendant Bowman. *Id.* 577 Pa. at 292, 844 A.2d at 1238 *citing Commonwealth v. Wayne supra* 553 Pa. at 630, 720 A.2d at 463-64. *See also Commonwealth v. Ruiz supra* 819 A.2d at 98 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016-17 *quoting Commonwealth v. Galindes supra* 786 A.2d at 1011; *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001; and *Commonwealth v. Bachert supra* 271 Pa.Super. at 77, 412 A.2d at 583.

Defendant Cogmon and co-Defendant Bowman had not completed their previously planned robbery of the victim when co-Defendant Bowman shot Mr. Rossiter, and Defendant Cogmon as well as co-Defendant Bowman were thus not relieved from their mutual obligation of being criminally responsible for each other's actions. *Id.* 577 Pa. at 292, 844 A.2d at 1238 *citing Commonwealth v. Wayne supra* 553 Pa. at 630, 720 A.2d at 463-64. *See also Commonwealth v. Ruiz supra* 819 A.2d at 98 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016-17

20

*quoting Commonwealth v. Galindes supra* 786 A.2d at 1011; *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001; and *Commonwealth v. Bachert supra* 271 Pa.Super. at 77, 412 A.2d at 583.

The robbery of Mr. Rossiter at the time of his shooting was as a matter of law ongoing. The robbery statute unambiguously states that "[a]n act shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft or in flight after the attempt or commission."[40] As the act of the robbery was not completed and Defendant Cogmon and co-Defendant Bowman had yet to even attempt to flee the scene of their criminality and/or ceased direct interactions with Mr. Rossiter, the robbery was still in progress.[41] N.T. 4/26/13, pp. 156-57, 167-68. Any acts by Defendant Cogmon and co-Defendant Bowman throughout this time period were undertaken in commission of the robbery and resulted in Defendant Cogmon and co-Defendant Bowman still being liable for each other's actions. The shooting of Mr. Rossiter by co-Defendant Bowman constituted such an action perpetrated "in the course of committing" the Defendants' premeditated, armed theft making Defendant Cogmon as well criminally liable.

In reviewing Defendant Cogmon's sufficiency challenge to his various conspiracy convictions the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. If the court finds " ... the record contains support for the convictions," the decision must remain as the jury concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing*

---

[40] 18 Pa.C.S. § 3701(a)(2).
[41] *Id.*

21

*Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213. The jury in reaching their verdict was able to use the information provided to them through the evidence offered by the Commonwealth, including, *inter alia*, Mr. Washington's testimony. As there was sufficient evidence for the jury to find beyond a reasonable doubt that Defendant Cogmon conspired to commit, *inter alia*, the robbery of Mr. Rossiter through the threatening or intentionally placing the victim in fear of immediate serious bodily injury, this court will not and is not permitted to replace the decision reached by the jury with its own conclusion otherwise

Based on these well-settled governing standards and the trial evidence, the jury was presented with sufficient evidence to sustain its guilty verdicts regarding Defendant Cogmon's Conspiracy to commit Robbery convictions.

***II. The Trial Court erred in denying the appellant's post-trial motion for a judgment of acquittal because the evidence was insufficient as a matter of law to establish the Appellant's guilt beyond a reasonable doubt on the charge of Robbery of the Second Degree (Count 8 – threaten immediate serious bodily injury), because the evidence at trial established that Appellant committed a strong-armed robbery.***

*See* Statement of Matters Complained, No. 3.

The material section of the Robbery provision as defined in the Pennsylvania Criminal Code is as follows:

> (1) A person is guilty of robbery if, in the course of committing a theft, he: …
>
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury; …

18 Pa.C.S. § 3701(a)(1)(ii).

The salient inquiry of the robbery statute in determining the type of bodily harm threatened is a defendant's intent and actions, and whether he reasonably placed a victim in fear

22

of "immediate serious bodily injury,"[42] and not the victim's subjective state of mind. *Commonwealth v. Thomas*, 376 Pa.Super. 455, 459-60, 546 A.2d 116, 118 (1988) *citing Commonwealth v. Morton*, 355 Pa.Super. 183, 186, 512 A.2d 1273, 1275 (1986). *See also Commonwealth v. Kubis* 978 A.2d 391, 397-98 (Pa.Super. 2009). Any use or show of force directed to a person while committing a theft brings that act within the scope of the Crimes Code's robbery section. *Commonwealth v. Duffey*, 519 Pa. 348, 357-58, 548 A.2d 1178, 1182 (1988) *citing Commonwealth v. Brown*, 506 Pa. 169, 176, 484 A.2d 738, 741 (1984). In proving as a matter of law this mode of robbery, the Commonwealth may rely on circumstantial evidence, in whole or part, to establish beyond a reasonable doubt all or some of this crime's requisite elements, including a defendant's necessary intent. *Commonwealth v. Davis supra* 861 A.2d at 323 *citing Commonwealth v. Coon supra* 695 A.2d at 797. *See also* Pa.SSJI (Crim) 7.02(A) and 7.02(B).

The force needed to sustain a robbery conviction may be actual or constructive. *Id.* 519 Pa. at 357-58, 548 A.2d at 1182. Actual force is applied to the body, while constructive force is the use of threatening words and/or gestures and operates on the victim's mindset. *Id.* 519 Pa. at 357-58, 548 A.2d at 1182. The question is whether the threat intended by a defendant was calculated to instill fear of immediate serious bodily injury.[43] This necessary threatening or intent to put another in fear of immediate serious bodily injury can be shown by the defendant's words, actions, and/or some combination of intimidating verbalizations and menacing activities. *Commonwealth v. Hurd*, 268 Pa.Super. 24, 29, 407 A.2d 418, 420 (1979). Threats to kill a

---

[42] "Serious bodily injury" as used for purposes of robbery pursuant to Section 3701(a)(1)(ii) of the Pennsylvania Crimes Code is statutorily described as " ... bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *See* 18 Pa.C.S. § 2301. *See also* Pa. SSJI (Crim) 15.3701(A); *Commonwealth v. Brougher*, 978 A.2d 373, 376-77 (Pa.Super. 2009); and *Commonwealth v. Thomas*, 376 Pa.Super. 455, 458, 546 A.2d 116, 118 (1988).

[43] 18 Pa.C.S. § 3701(a)(ii).

23

victim support a fact finder concluding a defendant intentionally placed his victim in fear of immediate serious bodily injury. *Commonwealth v. Matthew*, 589 Pa. 487, 494-95, 909 A.2d 1254, 1259 (2006). *See also Commonwealth v. Hall*, 574 Pa. 233, 242, 830 A.2d 537, 542 (2003) (Intent to put victim in fear of immediate serious bodily injury can be shown from defendant verbalizing reasons for his actions.) The defendant's nonverbal actions can as well allow a fact finder to inferentially determine a defendant threatened or intentionally placed his victim in fear of immediate serious bodily injury. *Commonwealth v. Matthew supra* 589 Pa. at 494-95, 909 A.2d at 1259. The brandishing of a deadly weapon can certainly warrant a fact finder concluding a defendant's intent to implant fear of immediate serious bodily injury and not just mere bodily injury. *Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118. *See also Commonwealth v. Sirianni*, 286 Pa.Super. 176, 183, 428 A.2d 629, 633 (1981).

Evidence of a defendant's aggressive actions that threatened a victim's safety can also justify a jury finding the intent reasonably suggested by the defendant's menacing conduct. *Commonwealth v. Alford*, 880 A.2d 666, 675 (Pa.Super. 2005) *citing Commonwealth v. Hopkins*, 747 A.2d 910, 914-15 (Pa.Super. 2000). The court in *Alford* held "[t]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii). It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of 'immediate serious bodily injury.' " *Commonwealth v. Alford supra* 880 A.2d at 676 *quoting Commonwealth v. Hopkins supra* 747 A.2d at 914-15. *See also Commonwealth v. Scott*, 246 Pa.Super. 58, 66, 369 A.2d 809, 813 (1975).

24

In *Commonwealth v. Guenzer*, the court found that the defendant intended to place the victim in fear of serious bodily injury:

> Although, Ms. Lips did not testify that she was in fear, we think there was sufficient circumstantial evidence to establish that she was placed in fear of serious injury. She was dragged into the middle of a street and thrown to the ground by a stranger obviously determined to take her purse notwithstanding any resistance she might offer. Not to fear serious bodily injury in such a situation would be an abnormal reaction, and any remaining doubt as to Ms. Lips' state of mind is removed by her screaming, described at trial by the bystander who captured appellant as 'ungodly screaming, a steady screaming.'

*Commonwealth v. Guenzer*, 255 Pa.Super. 587, 590-91, 389 A.2d 133, 134-35 (1978).

Viewed most favorable to the prosecution, the evidence was legally sufficient for Defendant Cogmon to be found guilty of Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury[44] by either or both of two (2) culpability avenues. First, the evidence was satisfactory to sustain the Defendant's conviction for this form of Robbery (Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury)[45] based on Defendant Cogmon's own actions of physically accosting Mr. Rossiter as the means to steal his wallet. The evidence was as well sufficient as a matter of law to support this Robbery (Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury)[46] conviction of Defendant Cogmon through the related actions of co-Defendant Bowman, including his menacing display of a firearm, under principles of conspiratorial liability in combination with the criminal episode's other material circumstances.

The lawfulness of Defendant Cogmon's conviction of robbing the victim through the threat and/or placing him in fear of immediate serious bodily injury is shown by those actions comprising his direct attack on Mr. Rossiter even prior to the co-Defendant's brandishing and

---

[44] 18 Pa.C.S. § 3701(a)(1)(ii).
[45] *Id.*
[46] *Id*

25

use of the firearm. Mr. Rossiter was accosted late at night after both Defendants had followed him to Mr. Washington's car from the Howard residence. N.T. 4/26/13, p. 130. Accompanied by the 6'3" co-Defendant, Defendant Cogmon without warning or provocation gripped the victim by his shirt, picking him off the ground, and forcibly propelled him all the way from the rear of the motor vehicle into the open front passenger door. N.T. 4/26/13, pp. 132-33. While pinning the victim in the car's passenger seat area, Defendant Cogmon physically looming immediately over the confined and prone Mr. Rossiter exerted enough brutal strength to remove the struggling victim's hands from his pants pockets and take from his person the wallet as Mr. Rossiter repeatedly cried out for help to Mr. Washington. N.T. 4/26/13, pp. 133-35. Mr. Washington described the Defendant's physical stature as shorter than his height of 6'4", but "bigger" and "wider," while his description of Mr. Rossiter was that of "a small guy." N.T. 4/26/13, pp. 132-33. Defendant Cogmon was clearly to violently take Mr. Rossiter's wallet from his person "notwithstanding any resistance [he] might [have] offer[ed]." *Commonwealth v. Guenzer supra* 255 Pa.Super. at 590-91, 389 A.2d at 134-35. The depth of the fear the Defendant's furious actions instilled in Mr. Rossiter is likewise shown by his repeated calling for help to Mr. Washington for help. As the *Guenzer* court observed, " … not to fear serious bodily injury in such a situation would be an abnormal reaction." *Id.* The totality of these circumstances shows the purpose of this attack by Defendant Cogmon was to implant a fear of immediate serious bodily injury in Mr. Rossiter to assure quick capitulation and ready surrender of his wallet.

Beyond those above-described facts demonstrating that Defendant Bowman in his own right committed the robbery of Mr. Rossiter through the threat or intentionally placing the victim in fear of immediate serious bodily injury, the Defendant's conviction in this regard can also on

26

the instant record be sustained under principles of conspiracy culpability. The trial evidence reveals that during the course of the robbery co-Defendant Bowman's brandishing of his firearm and pointing the handgun at the victim were as well intended to instill in Mr. Rossiter the ready fear of immediate serious bodily injury and bring the robbery to its swift and successful conclusion. As Defendant Cogmon and co-Defendant Bowman were involved in a conspiracy each would be liable for the acts conducted by the other in furtherance of the conspiracy. *Commonwealth v. Martin*, 465 Pa. 134, 177, 348 A.2d 391, 413 (1975) *citing Commonwealth v. Yuknavich*, 448 Pa. 502, 507, 295 A.2d 290, 293 (1972). Defendant Cogmon like a partner shares criminal responsibility for co-Defendant Bowman's menacing use of the firearm as well as for the co-Defendant's fatal discharging of the firearm. N.T. 4/26/13, p. 157. *See Commonwealth v. Olds supra* 322 Pa.Super. at 451-52, 469 A.2d at 1077 and *Commonwealth v. Roux supra* 465 Pa. at 490, 350 A.2d at 870. *See also* Pa.SSJI (Crim) 8.306(A).

Co-Defendant Bowman's implicit and overt brandishing of the handgun began literally within seconds of Defendant Cogmon commencing the robbery-assault of the victim and was ongoing for the balance of the criminal event until the co-Defendant finally fired the weapon and killed Mr. Rossiter. N.T. 4/26/13, p. 157. Right after the Defendant commenced the assault and robbery of the victim, Mr. Washington began moving to his friend's aid only to be dissuaded from any such intervention by co-Defendant Bowman's implied threat of having a firearm when the co-Defendant reached into his hooded sweatshirt and menacingly motioned. N.T. 4/26/13, pp. 134-35. Co-Defendant Bowman removed the firearm from his sweatshirt and pointed the weapon at his face when Mr. Washington once again moved to assist Mr. Rossiter as the Defendant's robbery and assault continued. N.T. 4/26/13, pp. 135-36. The co-Defendant's now overt brandishing of the firearm persisted through Defendant Cogmon mocking response to the

27

victim's request that he be left his items of identification, yet acknowledging his cash's loss to the Defendants. N.T. 4/26/13, pp. 139-40. When Mr. Rossiter moved to reclaim his wallet and reached toward the taunting Defendant, the co-Defendant still displaying the firearm, aimed the handgun at the victim, shot him, and killed Mr. Rossiter. N.T. 4/26/13, p. 157. Obviously realizing he had been shot, Mr. Rossiter fell to the ground and began crying out for help to Mr. Washington. N.T. 4/26/13, p. 166. *See Commonwealth v. Thomas supra* 376 Pa.Super. at 460, 546 A.2d at 118 and *Commonwealth v. Sirianni supra* 286 Pa.Super. at 183, 428 A.2d at 633.

The conspiratorial relationship between the Defendants was unquestionably as a matter of law established. Several hours before Mr. Rossiter was forcibly accosted, robbed, and killed, Defendant Cogmon patently demonstrating his felonious partnership with co-Defendant Bowman sent a text message to the co-Defendant, "might rob him when we done." N.T. 5/1/13. pp. 228-30, 234, 236. *See* also Commonwealth Exhibit C-56, submarked A through F - Photos of Huawei Cell Phone; Commonwealth Exhibit C-46 - Huawei Cellular Telephone; and Commonwealth Exhibit C-41 –Samsung Metro PCS Cellular Telephone. After the victim displayed the cash in his wallet, the Defendants momentarily and without explanation left the "rap battle" dressed in just T-shirts and returned now both clad in black hooded sweatshirts. N.T. 4/26/13, p. 132. N.T. 4/29/13, pp. 29-30, 99-101. Rather than simply removing his sweatshirt at Mr. Howard's residence and leaving it lying about, co-Defendant Bowman handed it directly to the Defendant. N.T. 4/29/13, pp. 29-30, 100-01. Defendant Cogmon for the remainder of the evening safeguarded the garment and did not leave his co-Defendant's sweatshirt unattended. pp. 100-01. Prior to the shooting, co-Defendant Bowman was observed reaching into the garment's front pocket, the very same pocket from which he would subsequently produce the firearm once the robbery commenced. N.T. 4/26/13, pp. 135-36. N.T.

28

4/29/13, 132-33. The Defendants collectively followed the victim and Mr. Washington on their leaving the Howard residence and together approached Mr. Washington's car. N.T. 4/26/13, pp. 130-31. The Defendants were still standing next to each other when only a few seconds later Defendant Cogmon grabbed the victim by his shirt, lifted him from the ground, violently drove him from the rear of the motor vehicle through the open car door, forcibly deposited him into the passenger seat area, and began clawing into Mr. Rossiter's pants pockets for the victim's wallet with enough brutal strength to readily overcome Mr. Rossiter's attempted resistance. N.T. 4/26/13, pp. 132-33. The conspiracy between the Defendants to rob Mr. Rossiter was clearly as a matter of law proven, and the goal of this conspiracy through the inclusion of a firearm in combination with the other salient evidence was shown to be the robbery of the victim by means of the threat and/or intentionally placing Mr. Rossiter in fear of immediate serious bodily injury. *Commonwealth v. Ruiz supra* 819 A.2d at 97 *citing Commonwealth v. Johnson supra* 719 A.2d at 784-85.

Reviewing the Defendant's sufficiency challenge on appeal as to the Robbery - Threaten or Intentionally Place in Fear of Immediate Serious Bodily Injury[47] conviction this assignment of error is meritless. As the evidence recounted above demonstrates, the jury was provided the facts required to reach a reasoned determination as to Defendant Cogmon's guilt be it as a principal, conspirator, or both. The Commonwealth was not required "to establish guilt to a mathematical certainty." *Commonwealth v. Davis supra* 861 A.2d at 323 *citing Commonwealth v. Coon supra* 695 A.2d at 797. Further, the jury was permitted to "evaluat[e] the credibility and weight of the evidence" and "believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77.

---

[47] 18 Pa.C.S. § 3701(a)(1)(ii).

29

*See also Commonwealth v. Hansley supra* 24 A.3d at 416. It was the jury's exclusive province to decide what they believed credible and dismiss what they found lacking.

The court may not disturb a jury's finding of guilt and a defendant's resultant conviction if it is supported by the record. *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213. The court is further not permitted to " … weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. Based on Mr. Washington's testimony surrounding the night in question and the facts that emerged through other material evidence the jury was provided legally sufficient factual circumstances to reach a lawful verdict that the Defendant committed the robbery of Mr. Rossiter through the threat and/or intentionally placing him in fear of immediate serious bodily injury.

***III. The Trial Court erred in denying the appellant's post-trial motion for a judgment of acquittal because the evidence was insufficient as a matter of law to establish the Appellant's guilt beyond a reasonable doubt on the charge of Robbery of the Second Degree (Count 9 – inflict immediate serious bodily injury), because the evidence at trial established that Appellant committed a strong-armed robbery.[48]***

*See* Statement of Matters Complained, No. 4.

In relevant part, the Pennsylvania Criminal Code defines Robbery per that below:

---

[48] Defendant's Statement of Matters Complained lists mistakenly the Defendant's Count 9 conviction as Robbery – Inflicts Immediate Serious Bodily Injury. The jury acquitted Defendant Bowman of this robbery mode. *See* Verdict, Paragraph No. II. *See also* N.T. 5/2/13, pp. 285-289. For purposes of the instant appeal, the court will thus review the legal sufficiency of the Defendant's Robbery – Inflicts, Threatens Fear or Immediate Bodily Injury conviction. *See* Defendant's Statement of Matters Complained, No. 4. *See also* Verdict, Paragraph No. IV.

30

(1) A person is guilty of robbery if, in the course of committing a theft, he: ...

(iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury; ... .

18 Pa.C.S. § 3701(a)(1)(iv).

This manner of Robbery - Inflict, Threaten, or Place in Fear of Immediate Bodily Injury[49] requires only that bodily injury occur, or a fear of bodily injury be intended, as opposed to immediate serious bodily injury per that discussed above.[50] Bodily injury is defined as an "[i]mpairment of physical condition or substantial pain."[51]

Similar to the analysis of Robbery – Intent to Inflict or Threaten Immediate Serious Bodily Injury,[52] the focus in reviewing this Robbery form (Inflict, Threaten, or Place in Fear of Immediate Bodily Injury)[53] is also a defendant's intent or the actions, not the victim's subjective state of mind. *Commonwealth v. Thomas supra* 376 Pa.Super. at 461, 546 A.2d at 119. *See also Commonwealth v. Ross*, 391 Pa.Super. 32, 35, 570 A.2d 86, 87-88 (1990) and *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 326-27, 673 A.2d 962, 966 (1996). In *Commonwealth v. Leatherbury*, the victim was attacked by two (2) men demanding his wallet and money. *Commonwealth v. Leatherbury*, 326 Pa.Super. 179, 183, 473 A.2d 1040, 1042 (1984). The *Leatherbury* court found " ... the trier of facts could infer that the young men intended to acquire the victim's money by placing him in fear of immediate bodily injury ... [w]hether the victim was in fact put in fear under such circumstances was not controlling." *Commonwealth v. Leatherbury supra* 326 Pa.Super. at 184, 473 A.2d at 1043.

---

[49] 18 Pa.C.S. § 3701(a)(1)(iv).
[50] 18 Pa.C.S. § 3701(a)(1)(ii).
[51] 18 Pa.C.S. § 2301.
[52] 18 Pa.C.S. § 3701(a)(1)(ii).
[53] 18 Pa.C.S. § 3701(a)(1)(iv).

Based on the applicable law and the above recounted facts established at trial as well as accepting the evidence in the light most favorable to the prosecution, Defendant Cogmon's appellate complaint challenging the sufficiency of the evidence supporting his Robbery - Inflict, Threaten, or Place in Fear of Immediate Bodily Injury[54] conviction is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

The totality of that done by Defendant Cogmon amply demonstrates evidence that he intended to put Mr. Rossiter in fear of immediate bodily injury as a means to take from his wallet and its two hundred dollars ($200.00). The Defendant's threatening, assaultive, and physically menacing actions culminating in his forcibly removing Mr. Rossiter's wallet from the victim's pants pocket all combines to show that such were undertaken with the intent requisite to this manner of robbery. N.T. 4/26/13, pp. 130-34. The mocking of the victim and holding of the wallet out for Mr. Rossiter to attempt to grab, but taunting him that the only way in which he would get his wallet back was a physical confrontation between the mismatched robber and the small sized victim further corroborates the Defendant's intent was to implant in Mr. Rossiter a fear of immediate bodily injury. N.T. 4/26/13, p. 140. *See Commonwealth v. Richardson,* 431 Pa.Super. 496, 499-500, 636 A.2d 1195, 1197 (1994) and *Commonwealth v. Brunson,* 938 A.2d 1057, 1060 (Pa.Super. 2007).

Viewing the entirety of the evidence in the light most favorable to the Commonwealth, this verdict of the jurors must be upheld. The jury, as exclusive fact finder, was "free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting*

---

[54] 18 Pa.C.S. § 3701(a)(1)(iv).

*Commonwealth v. Emler supra* 903 A.2d at 1276-77. *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Once again, it was the jury's prerogative to consider Mr. Washington's testimony regarding the night of the robbery and homicide however they saw fit. Based on their decision, it is apparent that the jury found Mr. Washington's recounting of his friend's robbery and murder credible. This court is not permitted to set aside the jury's verdict if the record at bar "contains support for the conviction." *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213. As there was sufficient evidence allowing the jury to reach the conclusion that Defendant Cogmon committed this challenged mode of robbery,[55] the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. This assignment of error on appeal is without merit.

> ***IV. The Trial Court erred in denying the appellant's post-trial motion for a judgment of acquittal because the evidence was insufficient as a matter of law to establish the Appellant's guilt beyond a reasonable doubt on the charge of Murder in the Second Degree because the Commonwealth failed to prove a material element of the offense, that is, that the killing of Jason Rossiter was in the furtherance of the alleged robbery.***

*See* Statement of Matters Complained, No. 1.

Salient to the issue advanced by Defendant Cogmon per this error assignment, Second Degree Murder is defined in the Pennsylvania Criminal Code as follows:

---

[55] 18 Pa.C.S. § 3701(a)(1)(iv).

33

(b) Murder of the second degree.-- A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony ... .

(d) Definitions.-- As used in this section the following words and phrases shall have the meanings given to them in this subsection: ... .

"Perpetration of a felony." The act of the defendant in engaging in or being an accomplice in the commission of, ... , or flight after committing, or ... robbery ... .

18 Pa.C.S. § 2502(b)(d).

The seminal Pennsylvania case concerning Murder of the Second Degree is *Commonwealth v. Redline. Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958). The Pennsylvania Supreme Court in *Redline* held "[t]he mere coincidence of homicide and felony is not enough to satisfy the requirements of the felony-murder doctrine. 'It is necessary to show that the conduct causing death was done in furtherance of the design to commit the felony. Death must be a consequence of the felony and not merely coincidence.' " *Id. supra* 391 Pa. at 495, 137 A.2d at 476 *citing* Perkins, 'Malice Aforethought,' 43 Yale L.J. 537 (1934). *See also Commonwealth v. Olds supra* 322 Pa.Super. at 450, 469 A.2d at 1077 *quoting Commonwealth v. Kelly*, 337 Pa. 171, 175-76, 10 A.2d 431, 433 (1940)("There is unity of criminal action between the planning of a crime, its execution or attempted execution and the flight from the scene. There may be between the commission of a robbery and the later commission by the same felon, of a homicide, such disunity in time, place and purpose as to make the two felonies distinct ... .")

The Supreme Court in *Redline* relatedly concluded that the act of homicide must have been committed " ... by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking." *Commonwealth v. Redline supra* 391 Pa. at 496, 137 A.2d at 476 (Emphasis and citations omitted). The Supreme Court of Pennsylvania in subsequent cases found, " ... where a killing occurs in the commission of a felony, all who

34

participate therein are equally guilty of murder." *Commonwealth v. Martin supra* 465 Pa. at 177, 348 A.2d at 413 *citing Commonwealth v. Yuknavich supra* 448 Pa. at 507, 295 A.2d at 293.

Since *Redline supra*, the Pennsylvania Supreme Court has held "[w]hen an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony." *Commonwealth v. Legg*, 491 Pa. 78, 82, 417 A.2d 1152, 1154 (1980) *citing Commonwealth v. Yuknavich supra* 448 Pa. at 506, 295 A.2d at 292. "The felony-murder rule thus holds one responsible for the consequences resulting from the malice which accompanies the perpetration of the initial felony." *Commonwealth v. Olds supra* 322 Pa.Super. at 450, 469 A.2d at 1076. In *Commonwealth v. Olds*, the shooting death of the victim occurred " ... if not in the course of an effort to obtain his wallet, at least in the process of escaping the scene of an attempted robbery. This is undisputedly 'perpetration of a felony' as defined by 18 Pa.C.S. § 2502(d)[.]" *Id.* 322 Pa.Super. at 452, 469 A.2d at 1077.

Patently contrary to this error assignment of the Defendant, the above detailed relevant facts established at trial when recognized in a light most favorable to the prosecution readily demonstrate that there was abundant evidence for the jury to conclude beyond a reasonable doubt that Mr. Rossiter's killing was a consequence and not merely a coincidence of the Defendant's collective scheme to rob Mr. Rossiter. The Defendant's appellate complaint that Mr. Rossiter's murder was not in furtherance of his and co-Defendant's premeditated robbery is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500; *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at

35

260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103; *Commonwealth v. Martin supra* 465 Pa. at 177, 438 A.2d at 413 *citing Commonwealth v. Yuknavich supra* 448 Pa. at 507, 295 A.2d at 293; and *Commonwealth v. Olds supra* 322 Pa.Super. at 452, 469 A.2d at 1077.

Mr. Rossiter was shot and killed by co-Defendant Bowman during his reticent attempt to reclaim his wallet from the taunting Defendant. N.T. 4/26/13, pp. 156-57. This act by co-Defendant Bowman was certainly in furtherance of the Defendant's planned robbery as required for a lawful finding of Murder of the Second Degree.[56] *Commonwealth v. Redline supra* 391 Pa. at 495, 137 A.2d at 476 *citing* Perkins, 'Malice Aforethought,' 43 Yale L.J. 537 (1934). The robbery statute defines the scope of the crime to include the time period during the attempt stage, the criminality's perpetration, as well as during the flight after the robbery's commission.[57] Similarly, the material murder statute defines the "perpetration of a felony" as "[t]he act of the defendant in engaging in or being an accomplice *in the commission of ... or flight after committing* ... robbery ... ." 18 Pa.C.S. § 2502(d) (Emphasis added). Per these statutory definitions, the time frame of a robbery is expansive and not limited to the precise moment of an item's taking from the victim's person via the use of force, but as well includes the time and salient circumstances surrounding the felonious event. Defendant Cogmon and co-Defendant Bowman had not even begun retreating from the scene of the robbery at the time of Mr. Rossiter's murder. N.T. 4/26/13, pp. 156-57, 167-68. When co-Defendant Bowman shot and killed Mr. Rossiter, the Defendant was yet actively and directly engaged with the robbery victim while taunting him with the stolen wallet and mockingly threatening his requests that the wallet be returned, albeit without the two-hundred ($200.00) dollars. N.T. 4/26/13, pp. 129-40, 156-61.

---

[56] 18 Pa.C.S. § 2502(b).
[57] 18 Pa.C.S. § 3701(a)(2).

36

N.T. 4/29/13, p. 171. On such facts, there is certainly no " ... disunity in time, place and purpose as to make the two felonies distinct." *Commonwealth v. Olds supra* 322 Pa.Super. at 451, 469 A.2d at 1077 *quoting Commonwealth v. Kelly supra* 337 Pa. at 175-76, 10 A.2d at 433.

This evidence accepted most favorably to the prosecution clearly reveals that when co-Defendant Bowman shot and killed the victim, the robbery of Mr. Rossiter was still ongoing, the Defendants' conspiracy to rob the victim was continuing, and Mr. Rossiter was murdered in furtherance of the Defendants' agreed upon scheme to rob him. *Commonwealth v. Murphy supra* 577 Pa. at 292, 844 A.2d at 1238 *citing Commonwealth v. Wayne supra* 553 Pa. at 630, 720 A.2d at 463-64. *See also Commonwealth v. Ruiz supra* 819 A.2d at 98 *quoting Commonwealth v. Lambert supra* 795 A.2d at 1016-17 *quoting Commonwealth v. Galindes supra* 786 A.2d at 1011; *Commonwealth v. Baskerville supra* 452 Pa.Super. at 93, 681 A.2d at 201 *citing Commonwealth v. Robinson supra* 351 Pa.Super. at 316, 505 A.2d at 1001; and *Commonwealth v. Bachert supra* 271 Pa.Super. at 77, 412 A.2d at 583.

Defendant Cogmon perpetuated the robbery by taunting Mr. Rossiter that if he wanted his wallet back, he would have to fight him for it in reply to the victim's plea that could he at least be left with his identification document(s) while conceding the loss of his two hundred dollars ($200.00). N.T. 4/26/13, p. 140. N.T. 4/29/13, p. 171. When Mr. Rossiter responded to the Defendant's mocking and reached out in an effort to take his wallet back from Defendant Cogmon it was then that co-Defendant Bowman discharged his firearm and shot Mr. Rossiter. N.T. 4/26/13, pp. 156-57. Relying on circumstantial evidence, the clear inference favorable to the prosecution is that co-Defendant Bowman fired the fatal shot to protect Defendant Cogmon from Mr. Rossiter and/or to promote the robbery's obvious goal of stealing the victim's money by unquestionably assuring Mr. Rossiter would not successfully reclaim his cash. Thus, co-

37

Defendant Bowman's use of the firearm was "in the course of committing a theft" and "in furtherance" of the Defendants' felonious robbing Mr. Rossiter.

The jury in their task of determining the credible facts of the case and making a decision as to those facts was free to scrutinize the totality of the trial evidence and all witness testimony, including that of Mr. Washington. The jury in reaching their verdict " ... was free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77. It was the jurors' sole prerogative to accept or reject Mr. Washington's testimony regarding that which occurred before, during, and in the immediate aftermath of the Defendants robbery-murder of Mr. Rossiter. Pa. SSJI (Crim) 2.04. On the instant record, it is evident that the jury in the matter at bar did not reach their decision based on "mere suspicion or conjecture." *Commonwealth v. Davis supra* 861 A.2d at 323 *citing Commonwealth v. Coon supra* 695 A.2d at 797. Moreover, the jury was provided detailed testimonial evidence from Mr. Washington and other clearly incriminating evidence (*E.g.* the Defendant's text message to co-Defendant Bowman "might rob him when we done.") about the events surrounding the robbery and murder of Mr. Rossiter. The ultimate decision was left to the jury and the jurors collectively believed beyond a reasonable doubt that the murder of Mr. Rossiter was in fact in furtherance of the Defendants' planned robbery. A court reviewing a sufficiency challenge " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000.

38

***V. The Trial Court erred in denying the appellant's post-trial motion for a new trial because, the verdict was against the weight of the evidence on the charge of Murder in the Second Degree because there was more than sufficient evidence, as stated above and incorporated herein, for the jury to find that the killing of Jason Rossiter was a separate act from the robbery and not in furtherance of the robbery.***

*See* Statement of Matters Complained, No. 2.

For a weight of the evidence claim to be properly raised on appeal, such a claim " ... must [have been] preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." *Commonwealth v. Lofton*, 57 A.3d 1270, 1274 (Pa.Super. 2012) *citing* Pa.R.Crim.P. 607 and *Commonwealth v. Priest*, 18 A.3d 1235, 1239 (Pa.Super. 2011). Evidentiary weight claims to be reviewed on appeal first " ... shall be raised with the trial judge in a motion for a new trial." Pa.R.Crim.P. 607(A). "Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim." *Commonwealth v. Bryant*, 57 A.3d 191, 196 (Pa.Super. 2012) *citing Commonwealth v. Bond*, 604 Pa. 1, 16-17, 985 A.2d 810, 820 (2009). Defendant Cogmon for appellate review has properly preserved his weight of the evidence challenge. *See* Defendant's Motion for Post-Sentence Relief.

A challenge to the weight of the evidence " ... concedes that there is sufficient evidence to sustain the verdict." *Commonwealth v. Dupre*, 866 A.2d 1089, 1101 (Pa.Super. 2005) *quoting Commonwealth v. Sullivan*, 820 A.2d 795, 805-06 (Pa.Super. 2003), *appeal denied*, 574 Pa. 773, 833 A.2d 143 (2003).[58] Furthermore, " ... the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner." *Id.* 866 A.2d at 1101-02 (Emphasis

---

[58] The Defendant's continuation of his sufficiency argument in the context of the instant weight of the evidence challenge seemingly runs afoul of this applicable legal principle that such claims concede the conviction at issue is as a matter of law sustainable.

39

omitted) *quoting Commonwealth v. Sullivan supra* 820 A.2d at 805-06. Deference is yet

extended to the jury by recognizing in their exclusive fact-finding function that the jurors are

" ... to adjudge the credibility of witnesses and to determine whether their testimony, if believed,

establishes the elements of the offenses charged." *Commonwealth v. Stays*, 70 A.3d 1256, 1268

(Pa.Super. 2013).

A weight of the evidence claim is committed to the trial court's discretion subject to

appellate review of whether such discretion was properly exercised as is further detailed below:

> A claim alleging the verdict was against the weight of the evidence is addressed to
> the discretion of the trial court. Accordingly, an appellate court reviews the
> exercise of the trial court's discretion; it does not answer for itself whether the
> verdict was against the weight of the evidence. It is well settled that the [jury] is
> free to believe all, part, or none of the evidence and to determine the credibility of
> the witnesses, and a new trial based on a weight of the evidence claim is only
> warranted where the [jury's] verdict is so contrary to the evidence that it shocks
> one's sense of justice. In determining whether this standard has been met,
> appellate review is limited to whether the trial judge's discretion was properly
> exercised, and relief will only be granted where the facts and inferences of record
> disclose a palpable abuse of discretion.

*Commonwealth v. Brown*, 71 A.3d 1009, 1013 (Pa.Super. 2013). *See also Commonwealth v.
Karns*, 50 A.3d 158, 165 (Pa.Super. 2012); *Commonwealth v. Davidson*, 860 A.2d 575, 581
(Pa.Super. 2004) *quoting Davis v. Mullen*, 565 Pa. 386, 390, 773 A.2d 764, 766 (2001) *citing
Catalano v. Bujak*, 537 Pa. 155, 161, 642 A.2d 448, 450 (1994); *Commonwealth v. Dupre supra*
866 A.2d at 1101-02; *Commonwealth v. Sullivan supra* 820 A.2d at 805-06; *Commonwealth v.
Kim*, 888 A.2d 847, 851 (Pa.Super. 2005) *quoting Commonwealth v. Champney*, 574 Pa. 435,
444, 832 A.2d 403, 408 (2003); and *Commonwealth v. Widmer*, 560 Pa. 308, 321, 744 A.2d 745,
753 (2000) *citing Commonwealth v. Brown*, 538 Pa. 410, 436, 648 A.2d 1177, 1189 (1994).

The trial court judge will be provided great deference in his or her decision "[b]ecause

the trial judge has had the opportunity to hear and see the evidence presented, an appellate court

will give the gravest consideration to the findings and reasons advanced by the trial judge when

reviewing a trial court's determination that the verdict is against the weight of the evidence."

*Commonwealth v. Widmer supra* 560 Pa. at 321, 744 A.2d at 753 *citing Commonwealth v.*

40

*Farquharson*, 467 Pa. 50, 60, 354 A.2d 545, 550 (1976). An appellate court will not substitute its decision for that reached by the trial court, "[i]nstead, this [Superior] Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance." *Id.* 70 A.3d at 1268 *quoting Commonwealth v. West*, 937 A.2d 516, 521 (Pa.Super. 2007) *citing Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1036 (2007).

The Pennsylvania Supreme Court has described this discretion of the trial court and its abuse per that below:

> ... imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc.*, 533 Pa. 441, 447, 625 A.2d 1181, 1184-85 (1993).

Only if it can be determined that the trial judge committed an abuse of discretion will a weight of the evidence error assignment be found successful. *Commonwealth v. Brown supra* 71 A.3d at 1013. The abuse of discretion required in such a determination is one "[w]hen 'the figure of Justice totters on her pedestal,' or when 'the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride*, 436 Pa.Super. 44, 51, 647 A.2d 233, 237 (1994) *quoting Lupi v. Keenan*, 396 Pa. 6, 15-16, 151 A.2d 447, 452-53 (1959) (Musmanno, J., dissenting).

41

Based on the applicable law and the above detailed facts established at trial, Defendant Cogmon's assignment of error that the weight of the evidence did not support the jury's rejecting his argued contention that the killing of Mr. Rossiter was an act separate from the robbery and not in furtherance of the robbery is without merit.

Having presided over the Defendant's trial, listened attentively to the entirety of the evidentiary presentation, and heard the respective arguments of defense counsel as well as the Commonwealth, this court's conscience is not in the least shocked by the jury having concluded beyond a reasonable doubt that the killing of Mr. Rossiter was done in furtherance of the Defendants' previously schemed robbery of their victim. While appreciating the advocacy of Defendant Cogmon's attorney in arguing to the jury that the killing of Mr. Rossiter stemmed from his and co-Defendant Bowman's "rap battle" and simply was immaterial to the robbery, this court is in no manner troubled by the jury's determination that the murder of the victim was done to protectively bring a finish to the struggle between the Defendant and Mr. Rossiter, and end the robbery thus allowing the Defendants to flee before the struggling victim gained a measure of control and/or police responded to the scene. N.T. 4/26/13, pp. 127-70. N.T. 5/1/13, pp. 226-44. N.T. 5/2/13, pp. 113-18.

Common to all the Defendant's appellate claims is the contention that the shooting and murder of Mr. Rossiter was an act independent of the Defendants' conspiracy undertaken by co-Defendant Bowman only because of some personal animosity that developed between him and the victim throughout their "rap battle." N.T. 5/2/13, pp. 113-18. *See also* N.T. 10/10/13, pp. 6-7. It was the jury's sole province to " ... believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903

42

A.2d at 1276-77. *See also Commonwealth v. Hansley supra* 24 A.3d at 416 and PA.SSJI (Crim) 2.04.

Moreover, the jury was " ... free to resolve any doubts regarding [Defendant Cogmon's] guilt." *Id. quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. The jury heard such evidence as was framed by defense counsel's cross examination of witnesses and related argument in his closing summation that the co-Defendant's shooting and killing of Mr. Rossiter was beyond the robbery conspiracy's scope and/or perpetrated after the robbery was completed. N.T. 5/2/13, pp. 113-18. Exercising their exclusive fact finding prerogative and grounded in the trial evidence the jurors collectively determined to be credible, this court is not in the least troubled that the jury rejected the claim that Mr. Rossiter's shooting was wholly unrelated to the Defendants' agreed upon armed robbery of the victim. *Commonwealth v. Stays supra* 70 A.3d at 1268. On the announcing of the jury's verdict that it found Defendant Cogmon guilty of Second Degree Murder, this court did not temporarily lose its breath, almost fall from the bench, and/or suffer even a twinge of judicial conscience. *Commonwealth v. Davidson supra* 860 A.2d at 581 *quoting Nudelman v. Gilbride supra* 436 Pa.Super. at 51, 647 A.2d at 237 *quoting Lupi v. Keenan supra* 396 Pa. at 15-16, 151 A.2d at 452-53.

The juror's rejection of the defense's proffered alternative motive for co-Defendant Bowman shooting Mr. Rossiter is certainly readily supported by the trial record. If as the Defendant maintained at trial the co-Defendant's killing of the victim was driven only by the animosity stemming from their "rap battle," when Mr. Rossiter approached co-Defendant Bowman just prior to the robbery, extended his hand, and offered that he was a "good rapper," common sense and life experience dictates the co-Defendant then would have retrieved the

43

firearm from his sweatshirt and acted on his supposed rap driven animus. N.T. 4/26/13, pp. 132-33. Co-Defendant Bowman instead kept his handgun concealed and only impliedly menaced and overtly brandished the weapon once the robbery commenced to thwart Mr. Washington's attempts to come to the assistance of Mr. Rossiter. N.T. 4/26/13, pp. 134-36. The co-Defendant fired the handgun killing Mr. Rossiter after urging Defendant Cogmon to flee the robbery scene and seeing that the victim had begun to struggle with the Defendant in an effort to reclaim his wallet. N.T. 4/26/13, pp. 157, 161. Such evidence clearly demonstrates that co-Defendant Bowman's deadly use of the firearm was part and parcel of his and Defendant Cogmon's common robbery scheme and not just some lingering "rap battle" hostility.

The record of the matter at bar is devoid of any evidence of " ... partiality, prejudice, bias or ill will." *Id.* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. The record at bar lacks any evidence that the law was overridden or misapplied at any point of the trial. *Id.* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85. There is no evidence that the matter at bar was tried on any basis other than dispassionately by the trial court. The trial court's denial of the Defendant's weight of the evidence challenge was based on a " ... foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions." *Commonwealth v. Widmer supra* 560 Pa. at 322, 744 A.2d at 753 *quoting Coker v. S.M. Flickinger Company, Inc. supra* 533 Pa. at 447, 625 A.2d at 1184-85.

44

There being no abuse on this court's exercise of discretion the Defendant's weight of the evidence claim challenging his Murder of the Second Degree conviction on the instant record lacks merit.

For all the aforementioned reasons, the Judgment of Sentence should be affirmed.

**BY THE COURT:**



_____
Kevin F. Kelly                J.



45